1   CHARLES F. ROBINSON #113197
    charles.robinson@ucop.edu
2   CHRISTOPHER M. PATTI #118283
    christopher.patti@ucop.edu
3   MARGARET L. WU #184167
    margaret.wu@ucop.edu
4   University of California
    Office of the General Counsel
5   1111 Franklin Street, 8th Floor
    Oakland, CA 94607-5200
6   Telephone:    510-987-9800
    Facsimile:    510-987-9757
7
    Attorneys for Defendant
8   ELIZABETH LOFTUS

9                        UNITED STATES DISTRICT COURT

10                      SOUTHERN DISTRICT OF CALIFORNIA

11

12  DIANA NAPOLIS,                      Case No.  08CV557 WQH-NLS

13              Plaintiff,              DEFENDANT ELIZABETH LOFTUS'
                                        MEMORANUDM OF POINTS AND
14        v.                            AUTHORITIES IN SUPPORT OF MOTION
                                        TO DISMISS FIRST AMENDED
15  MICHAEL AQUINO, ET AL.,             COMPLAINT

16              Defendants.             Date:      September 15, 2008
                                        Time:      11:00 a.m.
17                                      Courtroom: 4
                                        Honorable William Q. Hayes
18
                                        **NO ORAL ARGUMENT UNLESS
19                                      REQUESTED BY THE COURT**

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION.................................................................................1

II.   THE COMPLAINT.............................................................................3

III.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO
      COMPLY WITH FEDERAL RULE OF CIVIL PROCEDURE 8(A)(2).............5

IV.   CLAIMS BASED ON PROFESSOR LOFTUS'S REPORT OF CONCERNS
      TO THE UNIVERSITY OF CALIFORNIA POLICE DEPARTMENT
      MUST BE DISMISSED.......................................................................6

      A.    The Federal Claim Against Professor Loftus Fails Because Plantiff
            Alleges No "State Action.".......................................................7

      B.    Professor Loftus' Report to the UCI Police Is Absolutely Privileged
            Under State Law......................................................................9

V.    TO THE EXTENT PLAINTIFF ASSERTS CLAIMS AGAINST
      PROFESSOR LOFTUS FOR OTHER CONDUCT, THOSE CLAIMS
      MUST BE DISMISSED.......................................................................10

VI.   CONCLUSION..................................................................................12

- i -

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Agnew v. Moody*, 330 F.2d 868 (9th Cir. 1964)………………………………………5

*Apple v. Glenn*, 183 F.3d 477(6th Cir. 1999)……………………………………11

*Annan-Yartley v. Honolulu Police Dept.*, 475 F. Supp. 2d 1041, (D. Haw. 2007)…………9

*Anthony v. County of Sacramento, Sheriff's Dep't*,
845 F. Supp. 1396, (E.D. Cal. 1994)………………………………………………....7

*Azul-Pacifico, Inc. v. Los Angeles*, 973 F.2d 704 (9th Cir. 1992)……………………7

*Coclanes v. Sagun*, 1994 U.S. Dist. LEXIS 16691 (N.D. Ill. Nov. 21, 1994)…………8

*Corcoran v. Yorty*, 347 F.2d 222, (9th Cir. 1965)………………………………5

*Dang Vang v. Toyed*, 944 F.2d 476 (9th Cir.1991)………………………………7, 8

*Hagberg v. California Federal Bank*, 32 Cal. 4th 350, (2004)……………………...9, 10

*Howerton v. Gabica*, 708 F.2d 380, (9th Cir. 1983)………………………………9

*Hughes v. Meyer*, 880 F.2d 967 (7th Cir. 1989)……………………………………8

*Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982)………………………………10

*Kirtley v. Rainey*, 326 F.3d 1088, (9th Cir. 2003)…………………………………7

*Lowery v. Hauk*, 422 F. Supp. 490 (C.D. Cal. 1976)………………………………5

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996)……………………………………6

*Moore v. Bush*, 535 F.Supp.2d 46 (D.D.C. 2008)…………………………………11

*Neitzke v. Williams*, 490 U.S. 319 (1989)………………………………………11

*Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, (9th Cir.1981)…………………5, 6

*Richards v. Duke University*, 480 F.Supp.2d 222, (D.D.C. 2007)…………………………11

*Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. Cal. 1990)……………………10

*Schmidt v. Herrmann*, 614 F.2d 1221 (9th Cir. 1980)………………………………6

- ii -

*Teta v. Packard*, 959 F.Supp. 469 (N.D. Ill 1997)......................................................8

**STATUTES AND CODES**

Cal. Civ. Proc. Code § 47..............................................................................9

Cal. Civ. Proc. Code §§ 335.1, 340, 343.........................................................11

Federal Rule of Civil Procedure § 8(a).........................................................5, 6

Federal Rule of Civil Procedure § 12(b)(1)...................................................2, 11

Federal Rule of Civil Procedure § 12(b)(6)........................................................2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

178936.1

## I.    **INTRODUCTION**

Defendant Elizabeth Loftus is a Distinguished Professor in the Department of Psychology and Social Behavior, the Department of Criminology, Law, and Society, and the Department of Cognitive Sciences, and a Fellow of The Center for the Neurobiology of Learning and Memory at the University of California, Irvine ("UCI"). Professor Loftus is an international expert on human memory and has conducted extensive research on false memories and how they can be created or implanted. Her research has made her skeptical of claims of "recovered memories," and she has sometimes testified as a defense expert in cases in which allegations of sexual or other abuse are based on allegedly long-suppressed memories. The question of recovered memories, particularly as they may relate to allegations of child abuse, is the subject of substantial, and heated, controversy. Professor Loftus's position on this controversy has made her a target for those on the opposite side of the issue.

Plaintiff Diana Napolis describes herself as a researcher of "ritual abuse" and the negative occult." (First Amended Complaint ("Complaint") ¶ 20, 22.) Her Complaint sets forth a long history of mental health challenges. It recites that she has been involuntarily committed under California Civil Code section 5150 on multiple occasions, that she regularly "hears voices," that she has experienced hallucinations, and that she has been diagnosed with schizophrenia. Plaintiff's mental health problems seem to have come to a crescendo in October 2002 when Plaintiff threatened actress Jennifer Love Hewitt, whom she apparently then believed was part of a conspiracy to plant voices in her head and to read her thoughts. (Plaintiff now believes that certain defendants, not Hewitt, were the cause of the voices she heard.) Around the same time, director Steven Spielberg found it necessary to obtain a restraining order against Plaintiff. Plaintiff pled guilty to stalking Hewitt and was placed on probation. (Complaint, ¶¶ 629-44.)

It appears that Plaintiff's mental health problems continued despite psychiatric treatment, and—as set forth in her Complaint—that she continues to hear voices and see conspiracies. At some point, her attention turned to Professor Loftus. As stated in her Complaint, Plaintiff wrote to UCI officials, apparently accusing Dr. Loftus of having used Plaintiff as a subject for remote mind control experiments. At around the same time, Dr. Loftus

1  received floppy discs, a letter, and emails about "Curio Jones," a name associated with Plaintiff.

2  In light of Plaintiff's prior history, Professor Loftus was understandably concerned. Plaintiff

3  alleges that UC Irvine's Whistleblowers' Unit initiated a police report and that Professor Loftus

4  "expressed fear to campus police." (Complaint, ¶ 663.) The police in turn notified Plaintiff's

5  probation officer.

6  　　　　Plaintiff has now filed a 190-page complaint (accompanied by hundreds of pages

7  more of exhibits) that contains many classic ingredients of a delusional pleading: the lengthy,

8  irrelevance-filed account, the re-hashing of ancient disputes, the allegations of a wide-ranging

9  conspiracy, the claim that Defendants have planted voices in Plaintiff's head, the alleged

10  monitoring of her thoughts, and the allegations of continual remote surveillance. Fortunately, the

11  Federal Rules of Civil Procedure provide ample tools for the Court to protect the parties and the

12  judicial system from the wasteful drain on public and private resources that such pleadings entail.

13  The Court should dismiss the complaint in its entirety because it fails to provide the "short and

14  plain" statement of a claim using "simple, concise and direct" allegations as required by Rule 8 of

15  the Federal Rule of Civil Procedure. In addition, the Court should dismiss Plaintiff's bizarre

16  conspiracy theories pursuant to Rule 12(b)(1) because such patently insubstantial claims are not

17  sufficient to create federal jurisdiction.

18  　　　　Furthermore, the Complaint should be dismissed under Rule 12(b)(6) because

19  Plaintiff fails to state a claim against Professor Loftus on any basis. She does not allege that

20  Professor Loftus participated in any wrongful conduct directed at Plaintiff prior to the 2006 police

21  report. As for Plaintiff's allegations regarding the police report, those do not support a claim

22  under either federal or state law. Reports to the police, even if made by public employees, do not

23  involve action "under color of law" as is required to state a federal claim under 42 U.S.C. section

24  1983. Similarly, California law absolutely immunizes statements made to police from liability for

25  the torts Plaintiff asserts.

26  　　　　The First Amended Complaint should be dismissed in its entirety with prejudice as

27  to Professor Loftus.

28

2

## II.    THE COMPLAINT

The Complaint constitutes 760 paragraphs filled with irrelevant, unnecessary detail and delusional allegations. Nevertheless, paragraphs 10-14 do purport to provide a summary of the conduct on which Plaintiff bases her legal claims, most of which has nothing to do with Professor Loftus. Thus, Plaintiff asserts that:

- In 1995-2000, "Defendant Aquino and his associates conspired to violate Plaintiff's Right to Privacy and First Amendment Free Speech on the internet." (Complaint, ¶ 10.) As subsequent paragraphs of the Complaint indicate, this apparently refers to years of flame wars conducted on Internet newsgroups between Plaintiff (using aliases) and several of the Defendants and others. (*Id.*, ¶¶ 192-514.) Plaintiff does not allege that Professor Loftus participated in any of this activity.

- Defendant Michelle Devereaux, the San Diego Union Tribune, and its reporter Defendant Mark Sauer obtained information about Plaintiff's identity from the San Diego State University Police. (*Id.*, ¶ 11.) Plaintiff does not allege that Professor Loftus participated in this activity. Furthermore, although Plaintiff alleges that Professor Loftus was quoted in an article about Plaintiff published by Sauer and the Union Tribune in September 2000, the article does not quote Professor Loftus as making any statements about Plaintiff. (See *id.* ¶ 420; Complaint Ex. 10.)

- After publication of the Union Tribune article, Devereaux sought to obtain private family court records about Plaintiff and Defendant Tanya Lysenko made threats and defamatory statements about her on the Internet. (*Id.*, ¶ 12.) Plaintiff does not allege that Professor Loftus was involved in this activity.

- Since May 2001, Aquino and others have used "nonlethal technology" including "Voice to Skull Devices," "Voice Synthesis Devices," and "Computer/Brain Interface," to plant voices in Plaintiff's head, read her thoughts, and direct her actions. (*Id.*, ¶ 13.) Plaintiff does not allege that Professor Loftus was involved in this activity.

3

- In 2002, in an attempt to escape Aquino's mind control, Plaintiff threatened Jennifer Love Hewitt and eventually pled guilty to stalking, causing damage to her reputation and revocation of her Marriage and Family Therapy license. (*Id.*, ¶ 14.) Plaintiff does not allege that Professor Loftus was involved in this activity.

Plaintiff does, however, allege one incident involving Professor Loftus. Specifically, she claims that

> [w]hile [Plaintiff was] being monitored by San Diego Probation Department, Defendant Loftus and other Does conspired to make a false police report about Plaintiff accusing her of activity which had never occurred which caused significant emotional distress for Plaintiff due to the extensive efforts it took to correct these misrepresentations.

(*Id.*, ¶ 14.) Plaintiff elaborates on this allegation in paragraphs 650 through 688 of the Complaint. Plaintiff apparently contacted UCI and asked that it investigate whether Professor Loftus had conducted "non-lethal technology" research on Plaintiff—in other words, whether Professor Loftus had been implanting voices in her head and reading her thoughts. (See *id.*, ¶ 653.) Professor Loftus also allegedly reported her suspicion that a package containing floppy disks had been mailed to her by Plaintiff anonymously. (See *id.*, ¶ 663.) Not surprisingly (given Ms. Hewitt's experience as a target of the Plaintiff's accusations), Professor Loftus reported fears for her safety to the UCI police. Those concerns were apparently passed on to Plaintiff's probation officer who listed them, among others, as reasons for opposing Plaintiff's request that some of her probation restrictions be lifted. (See *id.*, ¶¶ 659-64.) Ultimately, the UCI Police Department eliminated Plaintiff as a suspect in sending the discs because fingerprints on the envelope did not match hers, and the Department notified the San Diego Probation Department of that fact. (See *id.*, ¶¶ 671, 672, 685.) Plaintiff summarizes her allegations against Professor Loftus as follows:

> Plaintiff alleges that because she requested UC Irvine's IRB's to investigate whether Dr. Loftus might be involved in or was aware of Human Subjects Research violations involving Plaintiff, Defendant Loftus intentionally orchestrated emails, files, and discs be sent to herself on purpose to set-up Plaintiff in retaliation for requesting an investigation of Loftus.

4

(*Id.*, ¶ 675.)  Although the Complaint contains many other references to Professor Loftus, they relate to Professor Loftus's participation in various groups, her research, her testimony as an expert witness, and litigation she has been involved in – not any conduct with respect to Plaintiff.[1]

It is unclear exactly what the scope of Plaintiff's claims against Professor Loftus is supposed to be.  Despite the fact that the Complaint does not allege that Professor Loftus participated in the vast majority of the conduct alleged, the various "Causes of Action" set forth at the end of the Complaint (beginning at page 185) are asserted against "All Defendants," and each incorporates all the Complaint's preceding paragraphs.  The paragraphs within each Cause of Action generally refer to "Defendants" and the "acts of Defendants described above" (e.g., Complaint, ¶¶ 724, 725).  The final cause of action for "conspiracy" appears to seek to sweep in the Defendants as an undifferentiated group.  Therefore, it is not clear whether Plaintiff is asserting each claim against Professor Loftus based only on her own conduct in reporting her fears to the UCI Police Department or based also on the conduct of the other defendants through a conspiracy theory.  As discussed further below, however, whatever claims Plaintiff is attempting to bring against Professor Loftus should be dismissed.

## III.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH FEDERAL RULE OF CIVIL PROCEDURE 8(A)(2)

Federal Rule of Civil Procedure 8(a) requires that "[a] pleading that states a claim for relief must contain . . . (2) a *short and plain* statement of the claim showing that the pleader is entitled to relief."  (Emphasis added.)  Similarly, Rule 8(d)(1) (formerly Rule 8(e)) requires that "[e]ach allegation must be *simple, concise, and direct*."  (Emphasis added.)  Where a complaint "is so verbose, confused and redundant that its true substance, if any, is well disguised," it may be dismissed for failure to comply with Rule 8.  *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir.), *cert. denied*, 382 U.S. 966 (1965); *Agnew v. Moody*, 330 F.2d 868, 870-71 (9th Cir. 1964); *Lowery v. Hauk*, 422 F. Supp. 490, 491 (C.D. Cal. 1976); *see also Nevijel v. North Coast Life Ins. Co.*,

---

[1] The Complaint refers to the conspiracy allegations of another defendant, Michelle Devereaux (with whom plaintiff was apparently previously allied but who she now believes was part of the conspiracy) in which Devereaux named Professor Loftus as one of a number of individuals who was attempting to pierce Plaintiff's internet aliases.  (See Complaint, ¶ 500.)  Nevertheless, the Complaint alleges no wrongful conduct by Professor Loftus in doing so.

1  651 F.2d 671, 673 (9th Cir.1981) (complaint may be dismissed for failure to comply with Rules

2  8(a) and former Rule 8(e)); *Schmidt v. Herrmann*, 614 F.2d 1221, 1224 (9th Cir. 1980) (same).

3  "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the

4  complaint is wholly without merit." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

5         Plaintiff's Complaint is the opposite of "short and plain" or "simple, concise and

6  direct." As discussed above, its 190 single-spaced pages and 760 paragraphs of allegations run

7  the gamut from arguing her views of a litany of satanic ritual abuse cases in the early 1990's (see

8  Complaint, ¶¶ 20-191); to quoting extensive email conversations and Internet posts about these

9  cases and herself (see *id.*, ¶¶ 192-514); to describing details of patents for voice to skull devices

10 and of alleged attacks on her with such "nonlethal" technology by perpetrators who were "deeply

11 envious that she has talent, a family, and a spiritual life" and "outwitted them on the internet" (*id.*

12 ¶ 627; see also *id.*, ¶¶ 515-628); to recounting her confronting actress Jennifer Love Hewitt at

13 various events even though "[s]everal individuals told Plaintiff via V2K [voice to skull devices]

14 not to do this" (*id.*, ¶ 634; see also *id.*, ¶¶ 629-49); to alleging false statements by San Diego

15 probation officers, including that she had faxed – rather than mailed – a 40-page document to UC

16 Davis (see *id.* ¶¶ 650-88); to recommending steps for monitoring nonlethal technologies, making

17 mental health diagnoses, and defending therapist malpractice actions (see *id.*, ¶¶ 720-22). The

18 vast majority of these allegations do not even mention Professor Loftus. The Complaint should

19 be dismissed on this ground alone.

20 IV.   **CLAIMS BASED ON PROFESSOR LOFTUS'S REPORT OF CONCERNS TO
       THE UNIVERSITY OF CALIFORNIA POLICE DEPARTMENT MUST BE**
21     **DISMISSED.**

22         The Complaint alleges that Professor Loftus engaged in only the most limited

23 conduct that related to Plaintiff: she reported to UCI police her concerns regarding Plaintiff's

24 interest in her and her suspicion that a package she received in the mail had been sent by Plaintiff.

25 As discussed above, it is far from clear what causes of action Plaintiff contends these actions give

26 rise to. Nevertheless, it is clear that Plaintiff's allegations regarding Professor Loftus's report to

27

28                                      6

1  UCI police support neither federal nor state law claims.

2      A.  **The Federal Claim Against Professor Loftus Fails Because Plaintiff Alleges No "State Action."**

3

4      Plaintiff's only apparent federal law cause of action is based on her assertion that

5  defendants violated free speech and privacy rights guaranteed her under the U.S. Constitution.

6  (Complaint, ¶¶ 750, 752.)   "Plaintiff has no cause of action directly under the United States

7  Constitution. . . . [A] litigant complaining of a violation of a constitutional right must utilize 42

8  U.S.C. § 1983." *Azul-Pacifico, Inc. v. Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992).

9      To state a section 1983 claim, a "plaintiff must demonstrate a deprivation of a right

10  secured by the Constitution or laws of the United States, *and that the defendant acted under*

11  *color of state law.*" *Kirtley v. Rainey,* 326 F.3d 1088, 1092 (9th Cir. 2003) (emphasis added).   "A

12  person acts under color of state law, if he exercises power possessed by virtue of state law and

13  made possible only because the wrongdoer is clothed with the authority of state law." *Dang*

14  *Vang v. Toyed*, 944 F.2d 476, 479 (9th Cir.1991) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)

15  (quotations and citations omitted).  Plaintiff's complaint fails to allege that Professor Loftus acted

16  "under color of law."

17      Professor Loftus's status as a public employee is insufficient to establish that she

18  acted under color of law.

19      Employment by the state is relevant, but not conclusive, to the

20  question of color of law. *Polk County v. Dodson*, 454 U.S. 312, 321, 70 L. Ed. 2d 509, 102 S. Ct. 445 (1981) (public defenders not

21  acting under color of law when lawyering, because function performed serves interests of client rather than state). For that

22  reason, the Ninth Circuit looks to the nature of the conduct involved, as well as the surrounding circumstances, and not simply

23  to the defendant's official capacity.

24  *Anthony v. County of Sacramento, Sheriff's Dep't*, 845 F. Supp. 1396, 1400 (E.D. Cal. 1994).

25  "Actions taken under color of state law must be related to the state authority conferred on the

26  actor, even though the actions are not actually permitted by the authority. . . .  For conduct to

27  relate to state authority, it must bear some similarity to the nature of the powers and duties

28

1   assigned to the defendants." *Dang Vang*, 944 F.2d at 480.

2          Courts have repeatedly held that where a public employee merely reports unlawful

3   activity to police or executes a criminal complaint she is acting as a citizen, not as an agent of the

4   state and is therefore not acting "under color of law." Thus in *Coclanes v. Sagun*, 1994 U.S. Dist.

5   LEXIS 16691 (N.D. Ill. Nov. 21, 1994), the court dismissed a suit brought against a city sewage

6   commissioner and his staff who had called police to his office resulting in the plaintiff's arrest.

7   The Court ruled that "it is clear defendants were not acting 'under color of state law.'" *Id.* at *5.

8   The court noted that

9          Defendants acted as private citizens in summoning the police
           officers stationed in City Hall to the commissioner's office. There

10         is no indication that they were clothed with greater authority to
           make statements to the police than any other citizen would possess.

11         As [plaintiff] admits, the arresting officers were assigned to City
           Hall, not to defendants, and were therefore presumably available to

12         city employees and members of the public alike.

13  *Id.* at *7.

14         Similarly, in *Teta v. Packard*, 959 F.Supp. 469 (N.D. Ill 1997), the court rejected

15  section 1983 claims for violation of the plaintiff's free speech and due process rights against a

16  public university resident assistant who signed a criminal complaint against the plaintiff resulting

17  in his arrest by campus police in a university dormitory. Although it recognized the defendant's

18  status as a public employee, the court held that he was not acting "under color of state law"

19  because "[t]o sign and file a criminal complaint with the police is the act of a private citizen." *Id.*

20  at 475. "Absent proof that [the defendant] went beyond merely reporting the criminal conduct, in

21  a manner possible only by virtue of his position as a state employee . . . [plaintiff] cannot alter the

22  private nature of [defendant's] conduct." *Id.* at 476. See also *Hughes v. Meyer*, 880 F.2d 967,

23  972 (7th Cir. 1989) (state game warden's report to police not "under color of state law" because it

24  was "functionally equivalent to that of any private citizen reporting to the police the details of an

25  alleged criminal act"). Professor Loftus's status as a UCI faculty member endows her with no

26  special law enforcement authority, and her act of reporting concerns to the police is therefore the

27  act of a private citizen.

28         Private citizens may be liable for violations of section 1983 if it can be

                                             8
                                          - - -
                                                         WQHNLS

1  demonstrated that they participated in "joint action" by conspiring with a public agency to deny a

2  plaintiff's federal rights. *Howerton v. Gabica,* 708 F.2d 380, 383 (9th Cir. 1983). However,

3  
> [t]he Ninth Circuit requires more than "a relationship of cause and
> effect between the complaint and the prosecution" to prove
> conspiracy. *Radcliffe v. Rainbow Constr. Co.,* 254 F.3d 772, 784
> (9th Cir. 2001), *cert. denied,* 534 U.S. 1020, 122 S. Ct. 545, 151 L.
> Ed. 2d 423 (2001). A plaintiff must allege an "'agreement or
> meeting of the minds' to violate constitutional rights" between a
> private party and the government. *Fonda v. Gray,* 707 F.2d 435,
> 438 (9th Cir. 1983) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S.
> 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). "To be liable as
> a co-conspirator, a private defendant must share with the public
> entity the goal of violating a plaintiff's constitutional rights."
> *Franklin v. Fox,* 312 F.3d 423, 445 (9th Cir. 2002). The Ninth
> Circuit requires a "substantial degree of cooperation" between the
> government and a private citizen before finding such a conspiracy.
> *Id.*

11  *Annan-Yartley v. Honolulu Police Dept.,* 475 F. Supp. 2d 1041, 1046 (D. Haw. 2007). Although

12  the Complaint asserts a number of fanciful theories about conspiracies among the defendants, it

13  does not allege a conspiracy between Loftus and the UCI police to deny Plaintiff's constitutional

14  rights. On the contrary, the complaint alleges that the UCI Police Department ***cleared*** Plaintiff as

15  a suspect in the mailing of materials to Professor Loftus. (See Complaint, ¶¶ 671, 672.) The

16  section 1983 claim must be dismissed.

17  **B.    Loftus's Report to the UCI Police Is Absolutely Privileged Under State Law.**

18        Plaintiff's state law claims include causes of action for negligence, defamation,

19  violation of right to privacy, "false light," intentional infliction of emotional distress, and

20  "conspiracy." Under California law, Loftus's report to the UCI Police Department is absolutely

21  privileged against all of these claims.

22        California Civil Code section 47 provides that "[a] privileged publication or

23  broadcast is one made . . . (b) In any . . . judicial proceeding, . . . in any other official proceeding

24  authorized by law." "The privilege established by this subdivision often is referred to as an

25  'absolute' privilege, and it bars all tort causes of action except a claim for malicious prosecution."

26  *Hagberg v. California Federal Bank,* 32 Cal. 4th 350, 360 (2004). In addition, "the privilege

27  protect[s] communications to or from governmental officials which may precede the initiation of

28  formal proceedings." *Id.* at 362 (quotation omitted). In *Hagberg,* the California Supreme Court

9
- - -

1    ruled that the absolute privilege of section 47 applies also applies to reports made to law

2    enforcement officers:

3             the overwhelming majority of cases conclude that when a citizen
             contacts law enforcement personnel to report suspected criminal

4              activity and to instigate law enforcement personnel to respond, the
             communication also enjoys an unqualified privilege under section

5              47(b). These cases explain that a statement urging law enforcement
             personnel to investigate another person's suspected violation of

6              criminal law, to apprehend a suspected lawbreaker, or to report a
             crime to prosecutorial authorities is shielded from tort liability to

7              the same extent as a similar statement to administrative
             enforcement agencies. Reasoning that such communications are at

8              least preparatory to any other official proceeding authorized by law,
             . . . the majority of decisions in the Courts of Appeal have held

9              such statements to be shielded by an absolute privilege. We find
             these decisions to be persuasive . . . .

10

11    *Id.* at 364 (quotation and citation omitted).  The Court ruled that section 47 bars claims even

12    where it is alleged that the defendant "knowingly gives a false report of a crime" and acts

13    maliciously. See *id.* at 370-71.  Accordingly, all state law claims based on Professor Loftus's

14    report to the UCI Police Department must be dismissed.

15    **V.**    **TO THE EXTENT PLAINTIFF ASSERTS CLAIMS AGAINST PROFESSOR**

16          **LOFTUS FOR OTHER CONDUCT, THOSE CLAIMS MUST BE DISMISSED.**

17         As noted above, Plaintiff has not alleged any participation by Professor Loftus in

18    any of the alleged events on which her claims are based other than the report to UCI police, and it

19    is unclear whether she purports to impose liability against Professor Loftus for other conduct.  At

20    best, the Complaint contains vague allegations that "Defendants" participated in a "conspiracy."

21    (See, e.g., Complaint, ¶¶ 750, 758.)  These allegations are insufficient to impose liability on

22    Professor Loftus, and cannot survive even a motion to dismiss. "A mere allegation of conspiracy

23    without factual specificity is insufficient to support a claim." *Sanchez v. City of Santa Ana*, 936

24    F.2d 1027, 1039 (9th Cir. Cal. 1990) (citing *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d

25    621, 626 (9th Cir. 1988)).  "Vague and conclusory allegations" of participation in civil rights

26    violations "are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents*, 673

27

28

LOFTUS' MPA ISO MOTION TO DISMISS 08CV557
WQHNLS

1   F.2d 266, 268 (9th Cir. 1982).[2]

2         Furthermore, Plaintiff's delusional conspiracy allegations are not sufficient to

3   establish this Court's jurisdiction and should be dismissed under Rule 12(b)(1).

4         "A party invoking the federal court's jurisdiction has the burden of
          proving the actual existence of subject matter jurisdiction."
5         *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). Unless a
          complaint presents a plausible assertion of a substantial federal
6         right, a federal court does not have jurisdiction. See *Bell v. Hood*,
          327 U.S. 678, 682, 66 S. Ct. 773, 776, 90 L. Ed. 939 (1945).   A
7         federal claim which is so insubstantial as to be patently without
          merit cannot serve as the basis for federal jurisdiction. See *Hagans*
8         *v. Lavine*, 415 U.S. 528, 537-38, 94 S. Ct. 1372, 1379-80, 39 L. Ed.
          2d 577 (1974).
9

10  *Sanchez v. Elk Grove Unified Sch. Dist.*, 2007 U.S. Dist. LEXIS 87503, at *8-9 (E.D. Cal. 2007).

11  "A patently insubstantial complaint may be dismissed, for example, for want of subject-matter

12  jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Neitzke v. Williams*, 490 U.S. 319,

13  327 n.6 (1989); see also *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (district court may at

14  any time, sua sponte, dismiss complaint under Rule 12(b)(1) when its allegations are "totally

15  implausible, attenuated, unsubstantial, frivolous, devoid of merit.").

16        Allegations that describe a "fantastic and delusional scenario" are patently

17  insubstantial and subject to dismissal under Rule 12(b)(1).   *Richards v. Duke University*, 480

18  F.Supp.2d 222, 234 (D.D.C. 2007). "Claims that are essentially fictitious or otherwise fanciful

19  claims such as those that allege bizarre conspiracy theories, any fantastic government

20  manipulations of their will or mind, or any sort of supernatural intervention warrant a dismissal

21  under Rule 12(b)(1)." *Id.* at 233.  Thus in *Richards*, the court dismissed an action in which

22  plaintiff alleged "roving surveillance that followed her everywhere," and "a laundry list of

23  wrongful acts and conclusory allegations to support her theory of conspiracy." *Ibid.*  Similarly, in

24  *Moore v. Bush*, 535 F.Supp.2d 46 (D.D.C. 2008), the court dismissed as "fundamentally

25  incredible" allegations "that a conspiracy among the Government Defendants led to the

26  _____

27  [2] In addition, given that the Complaint alleges events that occurred in the early 1990's or even earlier, any other
    claims Plaintiff may seek to assert are likely also barred by the applicable statutes of limitations.  See e.g., Cal. Civ.
    Proc. Code §§ 335.1 (2 years for personal injury), 340 (1 year for libel or slander), 343 (4 years for relief not
28  otherwise provided for).

                                            11
                                           - - -

1   implantation of a micro-chip in his head and use of brain wave technology to disrupt his life." *Id.*

2   at 48.

3         Plaintiff's allegations are remarkably similar to—and just as insubstantial as—

4   those dismissed in *Richards* and *Moore.* Her complaint should also be dismissed under

5   Rule 12(b)(1) for lack of jurisdiction.

6   **VI.**    <u>**CONCLUSION**</u>

7         For the reasons stated above, Defendant Elizabeth Loftus' motion to dismiss

8   should be granted with prejudice.

9         Dated: August 8, 2008

10                           CHARLES F. ROBINSON
                        CHRISTOPHER M. PATTI

11                           MARGARET L. WU

12

13               By: <u>/s/ Margaret L. Wu</u>

14                   Margaret L. Wu

            Attorneys for Defendant

15               ELIZABETH LOFTUS

16

17

18

19

20

21

22

23

24

25

26

27

28

178837.1