Diana Napolis, In Pro Per
6977 Navajo Road, PMB 114
San Diego, CA. 92119-1503
(619) 873-5917

In Pro Per

FILED
2008 SEP -5 PM 12:25

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

DIANA NAPOLIS

    Plaintiff

    v.

MICHAEL AQUINO, MICHELLE DEVEREAUX, TANYA LYSENKO, AKA TANI JANTSANG, CAROL HOPKINS, DR. ELIZABETH LOFTUS, MARK SAUER, DAVID COPLEY, SAN DIEGO UNION-TRIBUNE, a business entity, SAN DIEGO STATE UNIVERSITY, and DOES 1-100, inclusive,

    Defendants

)  Case No.: 08CV557 WQJMA
)
)  EX PARTE APPLICATION
)  REQUESTING A CONTINUANCE FOR
)  GOOD CAUSE
)
)
)  RE: Hearing scheduled on
)  Date: September 15, 2008
)  Time: 11:00
   Courtroom: 4
   Honorable William Q. Hayes

    Plaintiff is requesting a 60 day continuance to further address the Defendants Motions to Dismiss and/or to Strike based on new information which has surfaced about the misconduct of one or more Defendants which were in clear efforts to keep Plaintiff from lawfully proceeding on this case.

    On March 25, 2008, Plaintiff filed a complaint against Defendants. On May 1, 2008, Plaintiff amended that complaint. Defendants Aquino, Lysenko, Loftus, Mark Sauer, San Diego Union-Tribune, and California Board of Trustees for the Sate of



California (erroneously named as San Diego State University) were served. Several attorneys have communicated with Plaintiff on behalf of Defendant Hopkins' but have insisted Hopkins has not been legally served. Defendant Devereaux is still avoiding legal service.

On 8/27/2008 Plaintiff filed a motion to dismiss defendants based on lack of subject matter jurisdiction without an award of attorney fees. As Plaintiff documented in this motion, there were attempts made to intimidate her which appeared to be in efforts to stop Plaintiff from proceeding in this court case. It worked. Because of that intimidation Plaintiff was not well enough to fully respond to Defendants motions to Dismiss and/or Strike.

These efforts to intimidate Plaintiff, in the context of an ongoing District Court case, was reported to the FBI. Plaintiff believes that it is a crime to attempt to intimidate a party from proceeding in a Federal civil case, especially if this intimidation can be traced to one or more defendants. Plaintiff requests restraining orders against all defendants for the reasons outlined.

Plaintiff has discovered new information which was found in her Superior Court case file, No. SCD 171331, about Defendants Aquino, Hopkins, and Loftus' attempts to stop Plaintiff from lawfully proceeding in this present court case, using San Diego Probation to work on their behalf. Attached is the receipt by the clerk of the Superior Court dated 9/3/08 to show when Plaintiff accessed this file. [Exhibit 1]

As background, on 3/4/2008 Superior Court Judge Szmowski restored Plaintiff's internet rights for the first time in 4 years. Plaintiff then published a web page which described the allegations made in the First Amended complaint, and has updated this web page frequently. It is posted at http://diananapolis.wordpress.com

In June of 2008 Plaintiff was informed by her acting probation officer Lisa Donohoo that a hearing for "modification of a court order" was scheduled on 6/12/2008. Plaintiff had been representing herself in Superior Court for at least the past year, and her

Pro Per status was known by all parties. However, Plaintiff was not provided with any further information about what specific order was to be modified.

On 6/12/2008 Plaintiff learned, for the first time, that there were complaints made to Lisa Donohoo of San Diego Probation by "anonymous" parties about the content of her web page, but their identities were not released to Plaintiff so she did not know how to respond. (In approximately April 2008, the Director of San Diego Probation assigned the Director of Ohio St. Probation, Lisa Donohoo, to supervise Plaintiff's case after she appealed to him to intervene due to the highly irregular conduct of two other probation officers assigned to her.) The 6/12/2008 hearing was continued to 6/18/2008 so that Judge Szmowski could decide the case.

Plaintiff was never provided with copies of any reports potentially submitted to the court by San Diego Probation at either of these court hearings and therefore assumed that there were no reports submitted to the court.

At the hearing on 6/18/2008 Plaintiff submitted the following report to Judge Szmowski of San Diego Superior court. [Exhibit 2]. Plaintiff requested that another hearing be set if the Judge intended to revoke her internet privileges so that these "anonymous" complaining individuals could be cross-examined, and Plaintiff could defend herself. Plaintiff also wrote that she thought it was inappropriate for San Diego Probation to bring these matters before the Superior Court in attempts to stop Plaintiff from exercising her rights to free speech during an ongoing federal proceeding.

At the 6/18/2008 hearing, Lisa Donohoo stated to the court that Probation did not intend to violate Plaintiff's probation over any of these issues "but the court needed to know about this." The District Attorney's office was silent on the issue and did not give an opinion. After Judge Szmowski reviewed the contents of Plaintiff's web page, and submissions, he did not revoke Plaintiff's internet privileges.

On 8/8/2008, Judge Szumowski granted Plaintiff's motion for an early release from San Diego Probation because of her good behavior which had been demonstrated over the past 4 ½ years. Plaintiff had also brought to the court's notice that she did not

feel safe while being monitored by San Diego Probation due to their ongoing misconduct which caused the Director of Probation to intervene on behalf of Plaintiff several times. Plaintiff has letters from the Director documenting these events. Before the court granted an early release from Probation, her psychologist was consulted, and the SAFE Task Force examined the contents of Plaintiff's computer and cleared her internet usage.

On 9/3/2008 Plaintiff accessed her Superior Court case file, and discovered that, unbeknownst to her, there had actually been an extensive report submitted to the court on 6/12/2008 by San Diego Probations' Lisa Donohoo which had included numerous emails and letters sent to her from Defendants Michael Aquino, Carol Hopkins, Elizabeth Loftus, and others. All of these complaints about Plaintiff were false. Again, although Plaintiff was representing herself Pro Per at this proceeding, she was never served with a copy of these documents.

These letters were filled with false allegations about Plaintiff in apparent hopes of having San Diego Probation violate her probation in general, (and have Plaintiff's recently restored internet rights revoked) in clear efforts to impede or stop Plaintiff from proceeding in this present District Court case.

Defendant Michael Aquino made numerous misstatements of fact and informed San Diego Probation that he thought Plaintiff's internet privileges should be revoked, and she should be confined in a mental institution because of the allegations that she made about him in her First Amended complaint and on her web page. [Exhibit 3] It was because of these types of false and defamatory allegations made by Aquino which led to the invasion of Plaintiff's privacy on September 24, 2000 after Mark Sauer's/San Diego Union's published a defamatory, invasive and outrageous news article about Plaintiff which quoted Defendant Aquino. It was this type of behavior that was the basis of Plaintiff's First Amended complaint about Michael Aquino.

Aquino further complained to San Diego Probation's Lisa Donohoo that Plaintiff's web host "wordpress" would not take down her web page based on his requests. Of important to notice, Defendant Aquino cc'd, or sent copies of his

correspondence (which was sent to San Diego Probation) to Defendant Elizabeth Loftus. Aquino copied other correspondence to Robert Menschel, another party from Aquino's cult the Temple of Set, who Plaintiff planned to add to this complaint.

Defendant Carol Hopkins also made numerous false allegations in her letter to Lisa Donohoo which was also submitted to San Diego Superior court. [Exhibit 4] It was because of these types of false and defamatory allegations made by Hopkins, which led to the invasion of Plaintiff's privacy in 2000, that formed the basis for Plaintiff's First Amended complaint about Carol Hopkins. Hopkins also wanted to have Plaintiff confined to a mental institution, which was an interesting defense to invoke in efforts to avoid addressing Plaintiff's allegations of libel, invasion of privacy, and conspiracy, in a pending Federal court case. Hopkins wrote:

> "I ask that you urge the court to issue a restraining order restricting her access to the internet or, at least restrain her from mentioning me and those Ms. Napolis has named as my "co-defendants' in her recent filing in Federal Court."..."I would strongly urge the court to consider returning Ms. Napolis to protective custody and further psychiatric intervention."

Defendant Elizabeth Loftus also wrote a letter to Lisa Donohoo, via her attorney Andrea Carreiera, misrepresenting the facts of Plaintiff's case against Loftus, in obvious hopes that San Diego Probation would stop Plaintiff from exercising her rights to free speech rights, and proceed on this case, although Loftus attempted to be somewhat more subtle about it then Aquino and Hopkins were. [Exhibit 5] In this letter, it was never mentioned that Plaintiff's requests for an investigation were made to the Institutional Review Board of the University of California school system, which should have been protected speech. The IRB has a mechanism for taking anonymous complaints so that subjects of investigation do not retaliate against those who initiated the complaints, but Plaintiff did not make an anonymous complaint.

Further, in this letter to San Diego Probation, Loftus misrepresented the context of Plaintiff's complaint to the IRB. Plaintiff did not claim that Loftus remotely programmed

Summary of Pleading - 5

her with "nonlethal" weaponry, Plaintiff requested an investigation occur into whether Loftus was involved in any aspect of the targeting of Plaintiff with nonlethals, which included computer/brain interface.

That UC Irvine researches the subject of computer/brain interface technology is now clearly in the public record. According to a public release posted on the University of California Irvine web page, titled, "<u>Scientists to Study Synthetic Telepathy,</u>" dated August 13, 2008, a research grant by the Army was awarded to the University of California at Irvine to study computer/brain interface. [Exhibit 6]   Therefore, based on the overall evidence which Plaintiff has submitted, her allegations should not be dismissed as frivolous. Further, since computer/brain interface is now going to be a formal subject of research conducted at the University of California Irvine, and obviously there will be human subjects, potential human rights violations along these lines might occur. If the retaliatory response to Plaintiff's request for an IRB investigation about these issues is the prototype for future complaints, it does not bode well for future subjects of research at the University of California Irvine. It was, in part, because of these types of misrepresentations made by Loftus, (which led to Plaintiff's invasion of privacy in 2000,) that formed the basis for Plaintiff's First Amended complaint about Elizabeth Loftus.

Further email between University of California Davis officials, (Campus police's Paul Henock, Vice Chancellor Robert Loessberg-Zahl, and Elizabeth Loftus, and others) was sent to Lisa Donohoo and submitted to San Diego Superior court. (Exhibit 7). The reason why Henock and Zahl were involved was that a few months ago Plaintiff had requested that UC Davis review the research study "Characteristics and Sources of Allegations of Ritualistic Abuse," by Dr. Gail Goodman, for irregularities which was well within Plaintiffs rights to request after she exhaustively reviewed this study. UC Davis then implied that they would report Plaintiff to the UC Davis campus police if she proceeded. Plaintiff proceeded anyway, appealed the process, and requested that a formal review by the University of California Office of the President which did occur.

Overall, the ongoing malfeasance displayed by the University of California school system, and their employees, has been deeply disturbing to Plaintiff.

In addition, these defendants all claimed in these letters that they felt "threatened" by Plaintiff, in efforts to have her reincarcerated, but not one of them could produce any threatening material which was directed towards them, unlike Plaintiff has done in this present court proceeding. That has always been the case.

It is important to note that Plaintiff chronicled a long history of attempts by her political opponents to make false accusations against her based on no legitimate evidence whatsoever in efforts to intimidate her off of the internet. This history is completely documented in Plaintiff's First Amended Complaint. At that time Plaintiff was a law abiding citizen and a highly regarded professional in her local community who had no criminal history. These defendants are applying the same modus operendi which is one of the reasons why Plaintiff has alleged an ongoing conspiracy.

Further, Plaintiff has been aware of Defendant Aquino's misconduct towards her for 13 years, and has never taken any illegal action against him. Plaintiff has been aware of Defendant Hopkins misconduct towards her for approximately 11 years, and has never taken any illegal action against her. Plaintiff has been aware of Defendant Loftus's misconduct towards her for at least 8 years, and has never taken illegal action against her. Therefore, Plaintiff has no desire to engage in illegal activity towards any of them today, and considers their MO to be yet another attempt to reverse reality.

In addition to the above evidence describing (as presently known) Defendants Aquino, Loftus and Hopkins attempts to stop Plaintiff from lawfully proceeding in this court case - by having San Diego Probation reincarcerate Plaintiff based on false allegations in the middle of this proceeding - as previously documented, there was a dead Raven placed on Plaintiff's doorstep, and there were recent threats found in several internet search engines stating "murder Diana Napolis." This obviously indicates an overall pattern of potentially illegal activity. The overall behavior that Plaintiff has


described clearly endangers Plaintiff and was meant to intimidate her from proceeding on this case.

     Plaintiff now seeks a continuance of 60 days to seek legal counsel to address the complex legal issues involved which have surfaced based on the misconduct of one or more defendants on this case. According to Federal Rules of Civil Procedure, rule 6 (b) [B] an extention of time can be granted if "the party failed to act because of excusable neglect." Plaintiff believes that she meets this criteria because she was threatened.

     Plaintiff requests that the court issue restraining orders against all Defendants in order to protect Plaintiff while this case is pending.

     Plaintiff requests that the court vacate the hearing dated September 15, 2008.

     In light of new information Plaintiff requests an additional 60 days to legally serve Defendants Carol Hopkins and Defendant Devereaux if that becomes necessary.

*[signature: Diana Napolis, Sept. 5, 2008]*

Diana Napolis, Pro Per, Dated September 5, 2008