```
SAN DIEGO SUPERIOR COURT
220 WEST BROADWAY-ROOM 2005, SAN DIEGO,
Date      09-03-08       Operator  JPK
Case No.      COPIES SCD171331  gpr
Receipt No.  028334-06667
Trans Type   AF
Allocations                         Amount
BU                                   61.00
          Total Allocated            61.00
  Tender  CK  Amount       61.00
  Tender      Amount
          Total Amount Paid          61.00
          Change Due                  0.00
```

THE PEOPLE OF THE STATE OF CALIFORNIA,                June 18, 2008

PLAINTIFF
    V.

DIANA LOUISA NAPOLIS
DEFENDANT

CASE NO. SCD 171331

<u>RE: MODIFICATION OF A COURT ORDER</u>

On 3/4/2008 at the hearing to Request Termination from Probation I was allowed internet privileges for the first time in 5 years. On 3/25/2008 I filed a federal lawsuit against a satanic cult leader, Michael Aquino, two other satanists, Michelle Devereaux and Tani Jantsang aka Tanya Lysenko, ex-San Diego Grand Juror Carol Hopkins, Dr. Elizabeth Loftus, reporter Mark Sauer and publisher David Copley of the San Diego Union-Tribune, and San Diego State University, alleging Negligence, Defamation, Violation of Right to Privacy, False Light, Intentional Infliction of Emotional Distress, Conspiracy to Violate Right to Privacy and First Amendment Right to Free Speech, and Conspiracy. In the body of my complaint I have alleged that I have been victimized with nonlethal technology by Michael and Lilith Aquino. I have made this allegation for years; now I am taking legal action about it.

I proceeded to publicize this well-documented 190 page lawsuit at http://members.cox.net/legalfed/NapolisvAquino.pdf for the public's review. In addition, this Federal complaint is publicly available on the District Court's web site. I filed this lawsuit in efforts to hold the above named individuals legally accountable for orchestrating a "sting" against me seven years ago which was intended to ruin my reputation and career and to stop my legal disclosure of information about them. If the authorities involved read this lawsuit, it will be crystal clear how these individuals set me up years ago, how I was victimized, and it will be clear that they are using the same MO today.

On 5/23/2008 I filed a Claim with San Diego County against San Diego Probation Department alleging Malfeasance, False reporting, Misconduct by a Peace officer, Violations of my First Amendment rights to free speech, Intentional and Negligent infliction of emotional distress and conspiracy which I also publicly posted at http://members.cox.net/legalfed/sandiegocounty.pdf after I received permission to do so from the Claims Division of San Diego County.

I have alleged that San Diego Probation has singled me out for special treatment which culminated in an incident in March 2008 in which Anna Guzman refused to allow me a travel pass to attend my brother's cremation in spite of Probation's own policy that allows probationers to have travel passes if they are in compliance. I have been in

compliance for four and one half years.

I also filed this complaint, in part, because of the fact that it took me 13 months to have San Diego Probation correct erroneous reports which were submitted to the court about me and after accessing other reports which I'm alleging are false. I have taken the Claim against the County off of my web site because it was rejected due to the statute of limitations. However, I am contesting that decision and plan to add San Diego Probation to my Federal complaint as soon as possible.

I have alleged in this complaint that, in some instances, San Diego Probation officials have been working in concert with my opponents in efforts to cause trouble for me in furtherance of the campaign to violate my first amendment rights to free speech which appears to be true in this case as well. Given this information, it is clear that San Diego Probation has a conflict of interest in this matter because I am sure these officials would like to have my internet privileges revoked because I named San Diego Probation in a legal complaint which was and will be accessible via my web page and they clearly do not care for me. One of the reasons why I made this complaint publicly available was for my protection. Because of the serious irregularities that have occurred with San Diego Probation, the Director of Probation, Mack Jenkins, assigned Lisa Donohoo as my Probation Officer (even though I have named Ms. Donohoo in my complaint) until my probationary status ends.

On approximately April 20, 2008 I published a web site "blog" on the free web site called wordpress.com at http://diananapolis.wordpress.com where I have established a legal defense fund and have provided a professionally written overview of my Federal lawsuit and a brief sentence about my complaint against the County. I believe that is entirely within my rights to provide an overview of my legal complaints no matter how unusual the allegations might be especially so due to the substantial amount of evidence I have which proves my allegations. I have used the term "allege" throughout this article on my site and it appears to me that the legal truth or falseness of the allegations I have made is for the Federal Court to decide, not San Diego Probation. Of note, I have not included any allegation on my web site that is not found in the publicly available Federal complaint I filed.

I've changed the title of my overview on the wordpress website a few times but presently it is titled "Diana Napolis, M.A., Satanic Ritual Abuse Researcher/Investigator Targeted with Nonlethal Technology by Satanists." [Exhibit 1] Other comments I make in this article about the parties involved are my opinions which I believe I'm entitled to express under the First Amendment. The people who I am writing about are public figures and I have a multitude of documents which back up my allegations and my opinions which means that the complaining parties cannot prove either "libel" or "malice." But if these parties do believe that my allegations are "libelous" in any way then I believe the proper court for them to raise their concerns in is Federal court, not criminal court.

I have another web site which is hosted by google at http://ritualabusecourtcasesproject.blogspot.com titled, "Ritual Abuse Court Cases

Project." [Exhibit 2] On this web site I quote directly from my Federal complaint and provide links to it.

For the record I have received several compliments for my wordpress blog page 1) a professor from Cal State Long Beach wants to use this web page in her course curriculum about child abuse; 2) multiple people have written to me from other countries including Germany and England, thanking me for having the courage to publicize this information which means my web sites have socially redeeming value.

On 6/10/2008 I was noticed to appear in court by San Diego Probation for a purported "Modification of a Court Order" hearing but despite leaving a phone message for Lisa Donohoo, I was not informed of what this hearing was specifically about. Given that I am legally representing myself, this is an issue because I was not prepared. Further, Ms. Donohoo did not do me the courtesy of speaking to me about any questions she might have had about the contents of my web site - in other words no investigation has been conducted.

I note that I have not received any complaints from the hosts of either wordpress or google about the content of these two web pages and to date the owners of these web sites have not taken down my work for any reason which indicates to me that the complaining parties are well aware that I am within my legal rights and instead want to inappropriately use San Diego Probation as an instrument of censorship in efforts to impact the court on their behalf knowing full well that San Diego Probation officials would probably prefer that my internet privileges be revoked due to their conflict of interest.

I have an empty link on my wordpress website called "Censorship" because I have been waiting for one or more parties to try to have my web site taken down based on frivolous complaints and/or to document their predictable attempts to try to cause trouble for me with San Diego Probation which they have done in the past.

At the hearing on 6/12/2008 I was informed that some "anonymous" individuals complained to my probation officer, Lisa Donohoo, alleging that I had written and posted "malicious" information about them on my web site. Ms. Donohoo informed the court that despite these complaints San Diego Probation was not going to "violate" my probationary status. At that time I requested that the Judge ask Ms. Donohoo to release the names of these individuals and disclose what the specific allegations were so that I could defend myself. Ms. Donohoo refused and the Judge agreed that I did not need to be informed about who the complaining parties were which appears to be a gross violation of my right to due process. Furthermore the Judge said he thought there was a "history" of this type of behavior on my part. **I correct this misrepresentation on my web page because it is untrue and I would like an opportunity to formally correct the record.**

In order to do that I will need more than the usual 2 minutes allotted to me to speak to the court at the hearing scheduled for 6/18/2008. I am requesting a court date so that a full hearing about this matter can be held at which time I would like to cross-examine the

complaining parties and to see the evidence upon which they are using to base their frivolous complaints about me. I do not believe that the content of my web site rises to the level of "harassing" behavior which apparently San Diego Probation believes as well otherwise they would have asked the court to violate my probationary status. I welcome the opportunity to disclose the information that I have collected which was the inspiration for my legal complaints and the basis for my web pages.

Additionally I have made every attempt to publicize my lawsuit on multiple forums on the internet against the satanists involved for my protection especially so since a dead Raven was placed on my doorstep two weeks ago and that is a common intimidation tactic used by satanic cults. At that time I contacted the police and told them that the parties on my lawsuit were more than likely the offenders. The police documented this information in a report and took pictures.

Because of the voluminous amount of information I have about all the parties named on my web site, it would make it easier to present my defense if I knew exactly who the complaining parties were. Since I am representing myself in this proceeding, I am requesting discovery and full disclosure of who the complaining parties are and the content of the exact allegations so that I can subpoena the appropriate individuals and defend myself in criminal court, the court my opponents evidently prefer their civil complaints to be heard within. If the court rejects my request to hold a hearing and revokes my internet privileges based on what I believe is a blatant attack on my First Amendment rights I will appeal that decision.

Respectfully submitted,

Diana Napolis, Pro Per
June 18, 2008

Exhibit 3

Page 1 of 1

## Donohoo, Lisa

**From:** Dr. Michael A. Aquino
**Sent:** Wednesday, May 14, 2008 9:45 AM
**To:** Donohoo, Lisa
**Cc:** Loftus Elizabeth F.
**Subject:** Diana Napolis Internet Sites

Dear Ms. Donohoo,

Napolis has published this "press release" on the Internet:

http://newsgroups.derkeiler.com/Archive/Sci/sci.psychology.psychotherapy/2008-05/msg00012.html

She has also created this threatening and defamatory web page:

http://www.diananapolis.wordpress.com

Upon discovering this webpage yesterday I sent an enote to the ISP requesting that it be taken down. As of this morning it is still there. Among its contents [referring to this new lawsuit of hers]:

"In pages 167-177 I allege that Dr. Elizabeth Loftus attempted to have me reincarcerated based on false allegations after I requested that the Institutional Review Board of UC Irvine investigate Loftus, for which I am demanding monetary damages and an explanation. Dr. Loftus claimed I had sent her material after which she felt "fear." For the record, the forensic evidence – a fingerprint on the envelope – which was sent to the DOJ did not match mine. In addition, I took a lie detector about this issue which I passed. In these pages I also expose what I believe to be malfeasance by San Diego Probation which was perhaps due to one or more defendants interaction with that department."

For the record, in view of Napolis' clear fixations, history of violence, and possession & discharge of a weapon [as stated in her lawsuit], I consider her a very real danger to the safety of my wife and myself. Furthermore, as is clear by this renewed and intensive Internet campaign of defamation, threats, and solicitation of others to defame and/or harm us, she has not been mentally healed or reformed in the slightest; indeed her mania and venom are if anything substantially more fanatic.

My wife and I respectfully request anything your Department can do to remove her Internet access and prevent her from pursuing her hate-campaign by other means. If you do not feel that she can be adequately restrained by your Department's supervision, we would support and request her return to mental confinement.

I am copying this eletter to Dr. Loftus to alert her to the Napolis webpage extract above.

Sincerely,
Michael A. Aquino

# Carol L. Hopkins

June 1, 2008

Ms. Lisa Donohoo, Probation Director
San Diego County Probation Department
3977 Ohio Street
San Diego, CA 92104

Re: Diana Napolis

Dear Ms. Donohoo:

This letter is a response to your question of how this defendant's continued actions have affected my life. Her past and present actions have harassed me and threatened my physical safety and well-being. I fear for my safety at her hands and at those she incites against me, and others, through the internet. I ask that you urge the court to issue a restraining order restricting her access to the internet or, at least restrain her from mentioning me and those Ms. Napolis has named as my "co-defendants" in her recent filing in Federal Court.

By way of background, I am a former schoolteacher and school administrator. In 1991-92 I was selected for the San Diego County Grand Jury and appointed Deputy Foreperson. The 1991-92 Grand Jury spent the majority of one year studying and holding hearings on problems within the dependency system as well as within the DA's child abuse unit.

These reports led to major upheavals within San Diego County and indeed many other jurisdictions. Though I was only one of 19 jurors I was the spokesperson and lead researcher. Many "child advocates" hated the reports and by extension me. They were vehemently opposed to any reform.

One of the areas of investigation, dealt with in Report No.8, HYPERLINK



▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ was Satanic Ritual Abuse (SRA). Apparently Diana Napolis was one of the unnamed investigators within the Department of Social Services who was criticized in this report.

In the several years following I occasionally contributed to an online bulletin board, hosted by an MIT professor, entitled "witchhunt." One of the frequent threads of discussion was the lack of any proof for the existence of SRA and various theories for why these cases kept happening.

I don't recall when "Curio," sometimes using other pseudonyms, began to post on this board and don't believe that I ever had any direct communication with her. Nonetheless, she began to post incendiary and untrue "information" about me, about my personal life, etc. I considered her harmless and to the best of my memory ignored her.

At the sunset of the Child Abuse Protection Act (Mondale Act) I was called to testify before the U.S. Congress and later the U.S. Senate as well as to work with the Senate to insure the protection of children while inputting protection to parents and others from false accusation. In an attempt to discredit my testimony, Congressional and Senate Committees were bombarded with material that had been posted by "Curio" on the internet. This also happened whenever I testified before various State Legislatures.

In 1998 I decided to move ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ I was no longer willing to live in such a public forum. Three months after moving there, a SRA abuse case (McMartin style) surfaced in one of the wealthy private schools attended by many expatriate children. A member of the community who knew about my background and expertise in this area told the English newspaper editor who then asked me to write an op-ed piece for them. I agreed to do so.

It was a cautionary piece. I didn't state that I didn't believe anything had happened but did cite some of the Grand Jury research and the FBI report that expressed deep concern about the lack of evidence for the existence of multi-perpetrator/multi-victim cases. Unknown to me, the grandchild of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, PRI candidate for President of Mexico and immediate past Minister of the Interior, was one of the alleged victims.

Labastida's daughter was deeply invested in her belief in an SRA cult existing within the school.

By the following week, the advocates for the case had found "Curio" and her various websites. That week there was another piece in the English-speaking paper extensively quoting "Curio" and an interview with her that sought to discredit my credentials, my personal history, etc. There were direct quotes that I was an advocate for known child molesters.

I received several anonymous, but official sounding, calls threatening my ability to live in ████, the forfeiture of my house, etc. I was warned not to write or speak another word on the subject. I also began receiving hate phone calls - a repeat of what I had endured in San Diego. Because of the warning I had received, I never publicly answered this piece and spent months frightened that I could lose my home.

My recollection is that shortly after I became aware of Miss Napolis' true identity a San Diego State Police officer and a Deputy DA spoke to me about pressing charges. In the process of trying to decide whether I wanted to pursue that course I went to various San Diego courthouses researching old court documents in an attempt to understand why she was so unbalanced and the source of her personal hatred towards me. The court cases on file that involved her family were so sad and disturbed that I decided I didn't want to add to her problems.

When Ms Napolis was apprehended after attacking Ms. Jennifer Love Hewitt and threatening Stephen Spielberg, I felt relatively certain that her fixation on me, Elizabeth Loftus, Mark Sauer and others had been displaced for other targets. It seems to have just been a brief lull as she has returned to us with a vengeance.

Ms Napolis' latest attacks go far beyond the pale of what I believe should be First Amendment guarantees. They are so inflammatory that even if Ms. Napolis herself is unable to act upon them there are enough similarly minded fanatics that one of them might. She has, once again, put all of us at grave risk. I believe Diana Napolis remains seriously unbalanced and certainly un-rehabilitated. I fear for my safety; more for that of Beth. Beth is easily found, by necessity lives a public life, and appears to be, at the present, Ms.

Napolis' primary target. Ms Napolis believes I live in ▓▓. Were she to know▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓I would be more alarmed. I have never met Ms. Napolis and though I have seen photos doubt that I would recognize her if she approached me. That, too, concerns me.

I would beg the court to consider the fact that I have been subjected to approximately 16 years of harassment. Anyone who googles my name or those of the other named defendants may place credence, as did the ▓▓▓▓ officials and my ▓▓▓▓ neighbors, in Ms. Napolis' defamation.

I don't know whether it is asking the impossible for this material to be removed from the internet. It appears to be reproducing geometrically. Getting this material on the internet was, I believe the primary reason for the lawsuit. To the best of my knowledge she has made no effort to serve any of the "defendants." This violation of her parole leads me to believe she intentionally misled the court when she asked to have her internet privileges reinstated.

I would strongly urge the court to consider returning Ms. Napolis to protective custody and further psychiatric intervention. I also would plead that the victims of Ms. Napolis' long campaign of internet slander be consulted and given an opportunity to hear evidence at subsequent parole hearings that she is "cured" before she is released and/or given further internet access. Of most immediate need, I would ask the court to issue an immediate restraining order providing protection from Ms. Napolis from personal contact, and all internet communication in which my name, and that of her other targets, is mentioned.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓. when If you would like for me to attend a hearing on this subject prior to▓▓▓▓, I am willing to do so.

Sincerely,


Carol L. Hopkins

Carreira, Andrea M

| | |
|---|---|
| From: | Elizabeth Loftus |
| Sent: | Wednesday, June 11, 2008 11:27 AM |
| To: | Carreira, Andrea M |
| Subject: | napolis |
| Attachments: | Letter_LoftusToDonohoo_6-2-08b.doc |

Letter_Loftus
onohoo_6-2-0

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Elizabeth Loftus, Ph.D.
Distinguished Professor

Psychology and Social Behavior
Criminology, Law and Society
Cognitive Sciences
Bren School of Law



UCI's Center for Psychology & Law:

1

## UNIVERSITY OF CALIFORNIA
IRVINE, CALIFORNIA 92697-7085

*Elizabeth F. Loftus, Ph.D.*
*Distinguished Professor*
*Psychology & Social Behavior*

June 3, 2008

Ms. Lisa Donohoo, Probation Director
San Diego County Probation Department
3977 Ohio Street
San Diego, CA 92104

Dear Ms. Donohoo:

Re: Diana Napolis Activities

I am writing to answer your question of how Ms. Napolis's activities have affected my life and work.

By way of introduction, I am Distinguished Professor at the University of California - Irvine. I hold faculty positions in both Psychology & Social Behavior, and in Criminology, Law & Society. I am also Professor of Law. I received my Ph.D. in Psychology from Stanford University in 1970. Since then, I have published 22 books and over 450 scientific articles. My writings of the last 30 years have focused on the malleability of human memory. I have been recognized for this research with five honorary doctorates and election to the National Academy of Sciences. Much of my writing focuses on the societal controversies swirling around accusations of abuse, and the potential for false memories of abuse to be created by unwitting psychotherapeutic practices. Perhaps this is why Diana Napolis decided to target her harassment towards me.

I have never met Ms. Napolis, nor been involved in any of her past legal problems involving accusations of stalking or other matters. Yet she has been writing letters and containing false information about me to officials at my University since 2006. For example, on August 21, 2006, Ms. Napolis included false accusations about me in a letter to Mr. John Lohse, Director of Investigations in the Auditor's Office of the University of California. There she claimed that I was involved with others in assaulting her "with the usage of Non-lethal weaponry." This alleged assault supposedly involved Ms. Napolis being subliminally programmed remotely via computer. On August 24, 2006, Ms. Napolis included false accusations about me in a telephone call to Ms. Kathy Allen from the Office of Equal Opportunity and Diversity at the University of California-Irvine. There she accused me of contacting authorities in San Diego in retaliation for her complaints. These are only two of many examples of her communications to my University - accusations that became known amongst many administrators and the campus police. The campus police became involved (especially Detective Caroline Altamirano) because of Ms.

Napolis' history of stalking celebrities, and the fear that she may indeed be dangerous. That fear was based in part on readily available public knowledge about Ms. Napolis's psychiatric history and her threats and stalking of well known celebrities, and her involvement with firearms. Ms. Napolis seems obsessed with the thought that I contacted authorities in San Diego to retaliate, which is completely untrue. Needless to say I was never involved in remotely programming Ms. Napolis with non-lethal weaponry. I wouldn't have the slightest idea of how to do that; moreover, I have no idea what she is talking about or whether such technology even exists.

These communications have been embarrassing to me, upsetting, and potentially damaging to my career since no matter how outrageous, a complaint to a University is likely to trigger an investigation as part of the University's normal procedures. Her false accusations suggest paranoia and mental instability. Moreover her activities have distracted me from my academic work due to time needed to spend dealing with them and my great worries over the potential threat to my personal safety that she poses.


In early 2008 Mr. Napolis filed a lawsuit against me and numerous other defendants. She has been repeatedly posting information about the lawsuit on the internet claiming that we have been subjecting her to torture and terrorization via nonlethal technology. These false accusations, while absurd on the their face, are nonetheless embarrassing, the lawsuit is harassing, and based on what I have read in the news about her mental health, I worry constantly about whether we are dealing with a psychotic, delusional woman who may be capable of great violence. I would very much like to see a restraining order put in place in this matter, or any steps that you or the Court could take to enhance my safety.

Thanks for consideration in this matter.



# University of California · Irvine

Search | Search Tips

**Thursday, September 4, 2008**

Make Today@UCI Your Home Page! | Contact University Communications | UCI Home

**Home**
**Calendar**
**Newsroom**
- **Zot!Wire**
- Press Releases
- Tipsheets
- Experts
- UCI in the News
- Healthcare News

**Special Reports & Spotlights**
- Arts & Humanities
- Campus Life
- Education
- Environment & Energy
- Health & Medicine
- Science & Business
- Society & Culture

**Quick Facts**
- Economic Impact
- Distinctions
- Fact Sheets
- Statistics & Reports

**Resources**
- Publications
- Graphic Identity
- Style Guide
- Meet the Media

**Chancellor's Site**
**Emergency Readiness**

Home > News > Press Releases & Media Advisories > Press Release

## Scientists to study synthetic telepathy

*Researchers get grant to develop communication system based on thoughts, not speech*

**Irvine, Calif., August 13, 2008**

A team of UC Irvine scientists has been awarded a $4 million grant from the U.S. Army Research Office to study the neuroscientific and signal-processing foundations of synthetic telepathy.

The research could lead to a communication system that would benefit soldiers on the battlefield and paralysis and stroke patients, according to lead researcher Michael D'Zmura, chair of the UCI Department of Cognitive Sciences.

"Thanks to this generous grant we can work with experts in automatic speech recognition and in brain imaging at other universities to research a brain-computer interface with applications in military, medical and commercial settings," D'Zmura says.

The brain-computer interface would use a noninvasive brain imaging technology like electroencephalography to let people communicate thoughts to each other. For example, a soldier would "think" a message to be transmitted and a computer-based speech recognition system would decode the EEG signals. The decoded thoughts, in essence translated brain waves, are transmitted using a system that points in the direction of the intended target.

"Such a system would require extensive training for anyone using it to send and receive messages," D'Zmura says. Initially, communication would be based on a limited set of words or phrases that are recognized by the system; it would involve more complex language and speech as the technology is developed further."

D'Zmura will collaborate with UCI cognitive science professors Ramesh Srinivasan, Gregory Hickok and Kourosh Saberi. Joining the team are researchers Richard Stern and Vijayakumar Bhagavatula from Carnegie Mellon University and David Poeppel from the University of Maryland.



Michael D'Zmura

**Related Links**

📷 PHOTO LINK

Larger image of Michael D'Zmura

🌐 WEB LINK

Cognitive Sciences

**Contact**

Laura Rico
949-824-9055
lrico@uci.edu

**Archives**

Aug. 2008
July 2008
June 2008
May 2008
April 2008
March 2008
Feb. 2008
Jan. 2008
2007
2006
2005
2004
2003
2002
2001
2000
1999

The grant comes from the U.S. Department of Defense's Multidisciplinary University Research Initiative program, which supports research involving more than one science and engineering discipline. Its goal is to develop applications for military and commercial uses.

1998
1997
1996
1995

**About the University of California, Irvine:** The University of California, Irvine is a top-ranked university dedicated to research, scholarship and community service. Founded in 1965, UCI is among the fastest-growing University of California campuses, with more than 27,000 undergraduate and graduate students and nearly 2,000 faculty members. The third-largest employer in dynamic Orange County, UCI contributes an annual economic impact of $3.6 billion. For more UCI news, visit www.today.uci.edu .

**News Radio:** UCI maintains on campus an ISDN line for conducting interviews with its faculty and experts. The use of this line is available free-of-charge to radio news programs/stations who wish to interview UCI faculty and experts. Use of the ISDN line is subject to availability and approval by the university.

[ back to top ]

A Service of University Communications © Copyright 2002-2008 UC Regents



## Donohoo, Lisa

| | |
|---|---|
| From: | Morehead, Stephanie A. |
| Sent: | Wednesday, May 21, 2008 8:00 AM |
| To: | Donohoo, Lisa |
| Subject: | FW: Napolis appears to be using the internet... |
| Attachments: | Fwd: she's back! |

**From:** Paul Henoch [mailto:pchenoch@ucdavis.edu]
**Sent:** Wednesday, May 21, 2008 6:57 AM
**To:** Morehead, Stephanie A.
**Subject:** FW: Napolis appears to be using the internet...

Hi Stephanie,

I received a request to contact you regarding Dianne Napolis. Apparently she is using a computer and would like to follow up with you whether she was in violation of her probation. If you are not handling her anymore could you advise me who is.

Thank You

Det. Sgt. Paul Henoch
UC Davis Police Department

**From:** Robert Loessberg-Zahl [mailto:
**Sent:** Saturday, May 17, 2008 5:49 PM
**To:** Paul Henoch
**Cc:** Steven Drown
**Subject:** Napolis appears to be using the internet...

Dear Paul,

Please see below from Professor Goodman. It appears that Diana Napolis has published a set of documents on the internet that make various accusations against Professor Goodman, Professor Loftus (Irvine) and Dr. Michael Aquino. The attached email shows the text of a document attacking Dr. Goodman's study on ritualistic child abuse, allegedly published on the internet by Ms. Napolis. Could you check with law enforcement authorities in San Diego and what, if any action, they are taking? It looks like Dr. Aquino may already have contacted them. I read his note—I wasn't aware of her having "discharged a firearm." Wonder what the context was?

Thank you.

BLZ

**From:** goodman.gail@gmail.com [mailto:goodman.gail@gmail.com] **On Behalf Of** Gail Goodman
**Sent:** Friday, May 16, 2008 8:00 PM
**To:** Robert Loessberg-Zahl
**Subject:** Fwd: [Fwd: Diana Napolis Internet Sites]

Hi,

6/9/2008

Here is the second email. Doesn't this violate Ms. Napolis' probation? Sorry but she just does not give up. I have not heard from her directly, so she is not bothering me at this time.

Thanks,
Gail

---------- Forwarded message ----------
From: Elizabeth Loftus
Date: May 14, 2008 1:34 PM
Subject: [Fwd: Diana Napolis Internet Sites]
To: ggoodman@ucdavis.edu

Hi Gail....I got this....then I went to the websites that are given in this email
on one of them i found the document that mentioned you.

what a pain.

*****************************************

Elizabeth Loftus

Distinguished Professor

Psychology & Social Behavior
Criminology, Law & Society
Cognitive Sciences
Bren School of Law



---------- Original Message ----------
Subject: Diana Napolis Internet Sites
From: "Dr. Michael A. Aquino"
Date: Wed, May 14, 2008 9:45 am
To: "Donohoo Lisa" <lisa.donohoo@sdcounty.ca.gov>
Cc: "Loftus Elizabeth F."

Dear Ms. Donohoo,

Napolis has published this "press release" on the Internet:

http://newsgroups.derkeiler.com/Archive/Sci/sci.psychology.psychotherapy/2008-05/msg00012.html

She has also created this threatening and defamatory web page:

http://www.diananapolis.wordpress.com

Upon discovering this webpage yesterday I sent an enote to the ISP requesting that it be taken down. As of this morning it is still there. Among its contents [referring to this new lawsuit of hers]:

"In pages 167-177 I allege that Dr. Elizabeth Loftus attempted to have me reincarcerated based on false allegations after I requested that the Institutional Review Board of UC Irvine investigate Loftus, for which I am demanding monetary damages and an explanation. Dr. Loftus claimed I had sent her material after which she felt "fear." For the record, the forensic evidence – a fingerprint on the envelope – which was sent to the DOJ did not match mine. In addition, I took a lie detector about this issue which I passed. In these pages I also expose what I believe to be malfeasance by San Diego Probation which was perhaps due to one or more defendants interaction with that department."

For the record, in view of Napolis' clear fixations, history of violence, and possession & discharge of a weapon [as stated in her lawsuit], I consider her a very real danger to the safety of my wife and myself. Furthermore, as is clear by this renewed and intensive Internet campaign of defamation, threats, and solicitation of others to defame and/or harm us, she has not been mentally healed or reformed in the slightest; indeed her mania and venom are if anything substantially more fanatic.

My wife and I respectfully request anything your Department can do to remove her Internet access and prevent her from pursuing her hate-campaign by other means. If you do not feel that she can be adequately restrained by your Department's supervision, we would support and request her return to mental confinement.

I am copying this eletter to Dr. Loftus to alert her to the Napolis webpage extract above.

Sincerely,
Michael A. Aquino

--
Gail S. Goodman

, Director

I ███████
e-mail: ███████
phone: ███████
fax: ███████

**Donohoo, Lisa**

From: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Sent: Friday, May 16, 2008 7:58 PM
To: Robert Loessberg-Zahl
Subject: Fwd: she's back!
Attachments: NapolisCritiqueOfGoodmanSRA08.pdf

Dear Dr. Loessberg-Zahl,
Thank you for your past help in regard to Ms. Diana Napolis who has been harrassing Beth Loftus, Phil Shaver, and me. I just received this email from Dr. Loftus. I have one more to send to you. Just thought you should know that the sage continues!
Cheers,
Gail

**Forwarded Conversation**
Subject: she's back!
------------------------

From: Elizabeth Loftus ▓▓▓▓▓▓▓
To: ▓▓▓▓▓▓▓▓▓▓
Date: Wed, May 14, 2008 at 11:00 AM
Attachments: NapolisCritiqueOfGoodmanSRA08.pdf

hi there.
she appears to be calling for your censure!
but at least she's not suing you.
xo
b

****************************************************

Elizabeth Loftus, Ph.D.
Distinguished Professor

Psychology and Social Behavior
Criminology, Law and Society
Cognitive Sciences
Bren School of Law



Tel ▓▓▓▓▓▓▓
e ▓▓▓▓▓▓▓



--------